NOT DESIGNATED FOR PUBLICATION

No. 128,881

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PRAVIN G. SAMPAT,
*Appellant*,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JAY D. BEFORT, judge. Oral argument held May 12, 2026. Opinion filed July 31, 2026. Affirmed.

*Pantaleon Florez Jr.*, of Topeka, for appellant.

*Marc Altenbernt*, general counsel, Kansas Department for Children and Families, for appellee.

Before HILL P.J., ARNOLD-BURGER, J., and ANDREA PURVIS, District Judge, assigned.

HILL, J.: Pravin G. Sampat appeals a district court's summary judgment denying him any relief on his age and race discrimination claims against the Kansas Department for Children and Families. Sampat had been discharged from his medical consultant position with the Kansas Disability Determination Services, a subagency of the Department for Children and Families. He reviewed medical records of people seeking state disability benefits.

Sampat raises two issues in this appeal. First, he contends that the court erred when it ruled that the doctrine of res judicata prevented him from bringing federal claims

1

in this state action. He argues in his second claim that the district court was in error, by ignoring important evidence, when it granted summary judgment to the Department for Children and Families. We have no jurisdiction to hear his first error claim, and our review of the record of his second claim convinces us that summary judgment was proper. Thus, we affirm.

*Sampat first pursues administrative remedies.*

Sampat is a naturalized United States citizen of Asian (Indian) descent. In 2015, Sampat began working as a medical consultant for the Kansas Disability Determination Services, an agency within the Kansas Department for Children and Families. Sampat was a board-certified and licensed physician, specializing in internal medicine. In his position with the Department, Sampat was responsible for reviewing applications for disability benefits to determine the applicant's eligibility for those benefits. Sampat worked under the supervision of Lori Brown, the director of Disability Determination Services, and Joshanna Stone, the medical administrator for the agency.

During the four years Sampat worked for the Department, he claims the conditions of his position changed. He alleged that he was assigned fewer cases for review and these cases were more difficult with longer records. This reduction affected his compensation because he was paid per case. Ultimately, the Department discharged Sampat from his position in December 2019.

Believing that his employment termination was based on his age or race, Sampat pursued administrative remedies. He filed employment discrimination claims with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission. He alleged that Administrator Stone became his supervisor sometime in February 2019, and that she began to take away or limit the cases assigned to Sampat. He also alleged that the "reason for [his] termination was actually discriminatory and based

upon an attitude that the new Director and the Administrator did not want [him] to make more money than the other employees, either because of [his] age, and/or because of [his] ethnicity . . . ."

The Equal Employment Opportunity Commission ruled Sampat did not establish a violation of the statutes, but it did give Sampat a right to sue letter. But, neither the EEOC nor the Kansas Human Rights Commission chose to pursue an action alleging employment discrimination on Sampat's behalf. On his own behalf, Sampat brought an action alleging several federal employment discrimination claims in federal court against the Department and Stone. After the exhaustion of his administrative remedies, Sampat sued in federal court.

*Sampat's federal court claims fail.*

Sampat sued the Department and Stone, as an individual, under the Fourteenth Amendment to the United States Constitution, as well as four federal statutes: 42 U.S.C. §§ 1981 and 1983, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act. In his petition, Sampat requested monetary, declaratory, equitable, and any other relief deemed appropriate to redress the violation of his civil rights.

The United States District Court for the District of Kansas granted the Department's motion to dismiss Sampat's claims. The court found: (a) the Department was entitled to sovereign immunity on his ADEA, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 claims; (b) Sampat filed suit after the statute of limitations had already tolled; and (c) qualified immunity barred Sampat's claims against Stone in her individual capacity.

3

*Sampat then seeks state court relief.*

After the federal district court dismissed his petition, Sampat brought a state court action, raising the same federal employment discrimination claims. The Department moved to dismiss, arguing that the same reasons that the federal court dismissed Sampat's petition should result in the district court dismissing Sampat's claims.

The district court granted the Department's dismissal motion after finding Sampat's federal claims were barred by res judicata and claim preclusion because he already litigated "the same federal race and age discrimination claims against [the Department] and Stone." The court found Sampat's petition was "devoid of any facts indicating Stone acted as an employer or qualified as an employer at any time." The court also concluded that under federal or state law, an employment discrimination claim could not hold Stone *personally* (emphasis added) liable for her individual conduct because the statutes require that an action be brought against an *employer* (emphasis added), not individual employees. Accordingly, the district court dismissed Sampat's petition.

Despite dismissing Sampat's federal claims, the district court did permit Sampat to amend his petition to assert any state-law claims he wanted to bring. Sampat then amended his petition to include the claims that the Department engaged in employment discrimination on the basis of age, under the Kansas Age Discrimination in Employment Act, K.S.A. 44-1111 et seq., and on the basis of race, under the Kansas Act Against Discrimination, K.S.A. 44-1001 et seq.

Once again, the Department moved to dismiss, arguing Sampat failed to state a claim upon which relief could be granted under K.S.A. 60-212(b)(6). The district court denied the dismissal motion, finding Sampat (1) properly exhausted his administrative remedies as required under the statutes; (2) timely brought a cause of action for his state-law claims as his amended complaint related back to his original petition; (3) had met his

4

"minimal burden of pleading claims" under the Act Against Discrimination and the Age Discrimination in Employment Act.

*Sampat's state claims are silenced by summary judgment.*

Next, the Department moved for summary judgment. In support, the Department argued that Sampat had failed to establish a prima facie case of discrimination under either Act, using attached affidavits by both of his supervisors, Lori Brown and Joshanna Stone. They alleged that Sampat's "work product became increasingly poor over time, due to his failure to complete his reviews timely and accurately." In her affidavit, Stone alleged that Sampat was informed of "his poor performance on multiple occasions and provided him additional coaching."

Sampat opposed the summary judgment motion, arguing that there were genuine issues of material fact that foreclosed summary judgment. To support his contention, Sampat attached excerpts from his deposition testimony, as well as an affidavit by Dr. Erin Griffeth, a former coworker and medical consultant with the Department. In her affidavit, Griffeth claimed that there was a change to the cases that Sampat was assigned. Griffeth recalled a text exchange with Sampat concerning the case assignments, and stated that based on her observations, Sampat received a disproportionate number of large cases for him to review. Griffeth also claimed that Sampat performed medical reviews as well as she and other medical consultants at the Department.

The agency moved to strike Dr. Griffeth's affidavit, contending statements within the affidavit lacked adequate foundation and it was thus inadmissible. The Department argued that Griffeth had no personal knowledge of Sampat's, or any other medical consultant's, work performance and likely received her information directly from Sampat regarding the change in his assigned cases to review. In other words, she simply repeated what Sampat had told her.

5

Then, shortly after additional discovery was ordered, the Department filed a reply brief in support of its motion to strike, attaching excerpts of Griffeth's deposition testimony to its reply brief. The excerpts supported its assertion that Griffeth's statements lacked adequate foundation and were inadmissible. Also from the additional discovery, the Department obtained a series of text messages between Sampat and Griffeth, in which Sampat messaged Griffeth, telling her about the change in work assignments before his termination.

In the December 23, 2024, journal entry, the district court granted summary judgment for the Department. The court found that no genuine issue of material fact existed regarding Sampat's qualifications for the position when he was terminated and whether he was replaced by a person of a nonprotected class following his termination. The court also granted the Department's motion to strike portions of the affidavit of Griffeth on the grounds that Griffeth "did not provide adequate foundation for her testimony and opinions contained within said paragraphs."

*We have no jurisdiction to consider Sampat's first issue.*

Sampat wants us to rule that the district court erred when it ruled that his federal claims that had been denied in federal court were barred by the res judicata doctrine in state court. That order is reflected in a journal entry entered on April 27, 2022. The trouble we have with this issue is that Sampat failed to mention this order in his notice of appeal.

6

The notice reads:

"Plaintiff, Pravin G. Sampat by his counsel Pantaleon Florez Jr. hereby gives notice of intent to appeal the Journal Entry Granting Defendant's Motion for Summary Judgment filed December 23, 2024, for reasons set forth in the Journal Entry by the Honorable Jay Befort, of the Shawnee County District Court to the Kansas Court of Appeals."

Courts are limited by the laws that create us. We can only do what the law allows us to do. In Kansas, there is no constitutional right to an appeal. The right to appeal is defined by statute, and it is not contained in the United States or Kansas Constitutions. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021). The Kansas Constitution states that the Kansas Supreme Court "shall have . . . such appellate jurisdiction as may be provided by law." Kan. Const. art. 3, § 3. Kansas appellate courts generally only have jurisdiction to entertain an appeal if the appeal is taken in the manner prescribed by statutes. *In re Parentage of E.A.*, 319 Kan. 748, 757, 560 P.3d 1149 (2024).

Fundamentally, Kansas appellate courts only obtain jurisdiction over the rulings identified in the notice of appeal. See K.S.A. 60-2103(b); *Assoc. Wholesale Grocers, Inc. v. Americold Corp.*, 293 Kan. 633, 637, 270 P.3d 1074 (2011), *cert. denied* 568 U.S. 928 (2012).

In his notice of appeal, Sampat identified only the district court's order, filed on December 23, 2024. Thus, we have no jurisdiction to consider the subject of the order from April 27, 2022. We add that Sampat's first issue, concerning dismissal of his federal employment discrimination claims, arises from an order that predated the notice of appeal by over two and a half years.

Accordingly, we hold that we lack jurisdiction to consider Sampat's federal employment discrimination claims.

7

*Was summary judgment properly granted here?*

Sampat framed two issues for us to consider: whether a sufficient evidentiary foundation was established that would allow consideration of the affidavit of Dr. Griffeth in opposition to summary judgment. And, secondly, whether the district court erred by granting summary judgment to the Department. We will address both claims under the general question of whether the court properly granted summary judgment to the Department.

*The law controlling summary judgments is well established.*

Summary judgment may be granted when a court finds the record shows that no genuine issue about any material fact exists and the moving party is entitled to judgment as a matter of law. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). When doing so, a district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. *GFTLenexa, LLC*, 310 Kan. at 982. In applying that rule here, that means all factual disputes must be resolved in Sampat's favor and any reasonable inferences drawn from the evidence must also favor Sampat.

An opposing party, such as Sampat here, must produce evidence to establish that a dispute about a material fact exists. 310 Kan. at 982. To escape summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. 310 Kan. at 982. "'[Mere speculation or] hope that something may develop later during discovery or at trial . . . is similarly insufficient to avoid summary judgment.'" *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

An issue of fact is not genuine unless it has a controlling legal force on a controlling issue. A disputed question of fact which is immaterial to the issue does not

8

preclude summary judgment. Said another way, if the disputed fact, however resolved, could not affect the judgment, then it does not present a genuine issue for purposes of summary judgment. See *Northern Nat. Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013).

On appeal, a reviewing court applies the same rules as the district court and, if the court finds that reasonable minds could differ about the conclusions drawn from the evidence, then reversal of the summary judgment is proper. Appellate courts review of the legal effect of undisputed facts is de novo. *GFTLenexa, LLC*, 310 Kan. at 982.

*Two Kansas Acts redress alleged discrimination claims.*

The Kansas Legislature used two statutory schemes to bar certain types of discrimination based solely on a person's membership in a certain class. The Kansas Act Against Discrimination and the Kansas Age Discrimination in Employment Act protect individuals from being subjected to discrimination because of their race, gender, national origin, age, or disability. See K.S.A. 44-1001 et seq.; K.S.A. 44-1111 et seq.

The Kansas Age Discrimination in Employment Act provides that an employer engages in an unlawful employment practice based on age

> "to refuse to hire or employ the person, to bar or discharge the person from employment or to otherwise discriminate against the person in compensation or in terms, conditions or privileges of employment; to limit, segregate, separate, classify or make any distinction in regard to employees because of age without a valid business motive." K.S.A. 44-1113(a)(1).

To be covered by the Age Discrimination in Employment Act, an employee must be at least 40 years old. K.S.A. 44-1112(a).

The Kansas Act Against Discrimination that bars several types of discrimination provides that it is an unlawful employment practice

> "[f]or an employer, because of the race, religion, color, sex, disability, national origin or ancestry of any person to refuse to hire or employ such person to bar or discharge such person from employment or to otherwise discriminate against such person in compensation or in terms, conditions or privileges of employment; to limit, segregate, separate, classify or make any distinction in regards to employees; or to follow any employment procedure or practice which, in fact, results in discrimination, segregation or separation without a valid business necessity." K.S.A. 44-1009(a)(1).

The two Acts are similarly analyzed with the only difference being the plaintiff's qualification in the protected group and require almost identical elements to substantiate a claim under either statutory scheme. See *Beech Aircraft Corp. v. Kansas Human Rights Comm'n,* 254 Kan. 270, 274, 864 P.2d 1148 (1993).

*To bring an age or race discrimination claim, a plaintiff must prove an employer's discriminatory intent in an employment decision.*

Under both Acts, a plaintiff's burden of proof is to prove by a preponderance of the evidence that an employer is guilty of a discriminatory practice. See *Beech Aircraft Corp.*, 254 Kan. at 273-74. Proving such a claim is not so easy a task. "Seldom do employers announce or document an unlawful intent to retaliate against an employee, so the issue typically turns on competing strands of circumstantial evidence." *Mattice v. City of Stafford*, No. 126,397, 2024 WL 3634294, at *6 (Kan. App. 2024) (unpublished opinion).

In these types of cases, often with conflicting circumstantial evidence, courts use a burden-shifting method of proof. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this method, the plaintiff first produces evidence establishing a prima facie case of discrimination. By prima facie case we adopt the definition of the term as "a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." Black's Law Dictionary 1442 (12th ed. 2024). The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for its employment decision. And finally, the burden shifts back to the plaintiff to show if the employer's produced reason is a pretext for discrimination. *Beech Aircraft Corp.*, 254 Kan. at 272-74.

In other words, we begin with the claimant presenting a prima facie case. If the plaintiff cannot do so, then the dispute ends and the plaintiff loses. If successful, the court hears the defendant's reasons for its conduct. If the defendant fails to do so, then the plaintiff is successful because the claimant has already presented a prima facie case. If the defendant does respond adequately, then the court returns to the plaintiff to see if the plaintiff can show that the reasons offered by the defendant for its actions are merely a smokescreen trying to cover discrimination.

A prime example of how these rules are applied was recorded by our Supreme Court in *Beech Aircraft* where the court held:

> "'A prima facie case of age employment discrimination may be established by circumstantial evidence proving that: (1) an individual is a member of a protected group; (2) adverse employment action was taken against the individual, *e.g.*, discharge, demotion, or failure to hire; (3) the individual was replaced by a person outside the protected group; and (4) the individual was qualified for the position.'" *Beech Aircraft Corp.*, 254 Kan. at 274.

Because claims under both Acts require substantially similar elements for a prima facie case of discrimination, they will be analyzed together. See 254 Kan. at 274. Under either statutory scheme, the ultimate question for the factfinder is whether age, race,

11

ethnicity, or national origin was a determining factor in the employer's decision. It need not be the sole reason, but there must be a showing that the plaintiff's protected class membership "'made the difference' in the employer's decision." *Elza v. Koch Indus., Inc.*, 16 F. Supp. 2d 1334, 1339-40 (D. Kan. 1998). Thus, we must decide whether Sampat's age or race made the difference in the Department's employment termination decision.

*The parties stake out opposing positions on this point.*

Sampat resolves this issue by arguing the district court erred in granting summary judgment for the Department because there were genuine issues of material fact about whether he was qualified for his position and whether he was replaced by a person outside his protected groups.

On the qualifications element, Sampat claims that there was a genuine issue of material fact and argues that the district court ignored his testimony "as to his history of never having his work performance reviewed or evaluated at or below standard." Sampat contends that the district court improperly excluded Griffeth's affidavit, as her statements were based on direct observations and personal interactions that Griffeth had with Sampat and other medical consultants. Sampat thus argues that he proved that he was qualified for his position when he was terminated through his and Griffeth's testimony and the district court erred in concluding otherwise.

Sampat next contends that under the law he need not show he was replaced by someone outside the protected class, the fourth element in a prima facie case of discrimination based on age or race. On the fourth element, Sampat argues he need not show he was replaced by a nonprotected group member. In his view, a plaintiff need only show membership in a protected class and termination from a position the plaintiff was otherwise qualified to hold.

Taking an opposing view, the Department contends that the district court properly granted summary judgment because Sampat failed to show that (1) he was replaced by a person outside the protected group, and (2) he was qualified for his position at the time he was terminated. The Department contends that Sampat failed to produce any admissible evidence to create a genuine issue of material fact on either element. Instead, the Department argues, Sampat provided evidence that was improperly speculative, and the court properly disregarded his testimony. Thus, the Department asserts that the district court properly granted summary judgment.

*Sampat failed to make a prima facie case of age or race discrimination.*

Given the burden shifting procedure that we must follow in these types of claims, our question is: did Sampat show a prima facie case of discrimination? We believe he did not. And, because he did not, our inquiry ends because the burden of proof never shifted to the Department.

If we follow the model of a prima facie case offered by the Supreme Court in *Beech Aircraft, Corp.*, we look to four areas. We repeat them:

(1) an individual is a member of a protected group;

(2) adverse employment action was taken against the individual, e.g., discharge, demotion, or failure to hire;

(3) the individual was replaced by a person outside the protected group; and

(4) the individual was qualified for the position. 254 Kan. at 274.

13

The parties agree on the first two. Sampat is within the protected groups covered by both Acts: age and race. They also agree that Sampat was subjected to an adverse employment action: termination from his employment.

Where the parties disagree, however, is whether Sampat met the third and fourth elements listed in *Beech Aircraft:* his replacement by a person outside the protected group; or, if he was qualified for his position. We will review those elements in that order.

*Replacement*

We disagree with the Department's interpretation of the third element from the *Beech Aircraft* model. The Department contends that Sampat had to show evidence that after his discharge he was replaced by a person who was not a member of the protected group to make a prima facie case of discrimination. We do not read that passage to mean that the *Beech Aircraft* ruling made it mandatory for a plaintiff to show evidence in every employment discharge case that they were replaced by a person outside the protected group. In our view, the Supreme Court was simply showing how the plaintiff in that case could show by circumstantial evidence that the employer was discriminating.

The Department's reading of that passage is far too narrow. The context of a passage helps determine its meaning. A closer reading of the opinion reveals our point. The Supreme Court, in the paragraph following its description of its model prima facie case, added a clarifying comment.

> '"A modification in elements (3) and (4) may be appropriate where the individual's position is eliminated in layoffs or reductions in force. In such circumstances, the plaintiff must produce evidence, circumstantial or direct, from which a factfinder might

reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' [Citation omitted.]" 254 Kan. at 274.

This language is not surplusage.

This additional comment convinces us that the third and fourth items listed on the model were examples of discrimination in that case and not a requirement in *all* cases. After all, we are dealing here with questions requiring proof by circumstantial evidence and circumstances vary with each case. A court dealing with decisions such as this must assess if the evidence shows that the employer intended to discriminate in reaching its decision. That conclusion here was reasonable under these circumstances, but in the next case, different circumstantial evidence may be required to show a prima facie case of the discriminatory intent of the employer.

In addition, the language used by the court when it adopted this example convinces us that these four elements comprised only a model approved by the court. The court began, "a prima facie case of employment discrimination *may* be established as follows: . . . ." (Emphasis added.) 254 Kan. at 274. That does not show us that this is the only way to establish a prima facie case.

We cannot hold that because Sampat did not show evidence that he "had been replaced by someone outside the protected group" his claim failed. That is not the correct question. Rather, the proper question is: is there evidence of discrimination by the Department in his discharge?

*Qualified*

The question raised by this element is whether Sampat presented a prima facie case that he was qualified to do the work but was terminated by the Department anyway.

15

In our view, Sampat failed to prove that he was qualified for his position when he was terminated.

Sampat argues that both his testimony and Griffeth's affidavit and testimony were sufficient to prove that he was qualified, contending the district court erred by ignoring his testimony and excluding Griffeth's affidavit. On the other side, the Department argues that Sampat failed to show his qualifications for the position. The Department contends that it provided evidence from Sampat's supervisors that his work performance became increasingly poor and he was terminated based on his poor job performance.

The district court excluded Griffeth's affidavit because she lacked adequate knowledge of Sampat's work to testify about his performance or the conditions of his employment. The only evidence remaining is Sampat's own testimony, which does not establish that he was qualified for his position when he was terminated. As a result, summary judgment was appropriately granted because Sampat failed to prove a prima facie case of discrimination.

*Dr. Griffeth's testimony was properly excluded*.

In her affidavit, Griffeth made several statements concerning Sampat's work performance, including:
> (1) that she reviewed appeals of determinations made by other physicians including Sampat;
> (2) that nearly all medical consultants had a disability review returned for some deficiency;
> (3) that she observed a change in Sampat's assigned cases for review in late 2019;
> (4) that in December 2019, Griffeth observed that Sampat was not being assigned easier cases for review;

(5) that she thought that it appeared Sampat received disproportionately large cases for review; and

(6) that Sampat performed medical reviews as well as herself and the other medical consultants.

After the submission of her affidavit, the court allowed Griffeth to be deposed. In her deposition testimony she could not recall or had little information concerning Sampat's work performance outside of what Sampat himself had told her. She testified that she could not determine whether her knowledge concerning the changes to Sampat's assigned cases came from Sampat himself or from another source. And she testified that she did not know why Sampat was terminated and could not conclude that Sampat's race or age could have been a factor.

The district court discounted the value of Griffeth's affidavit and testimony. The court found that Griffeth lacked personal knowledge about Sampat's work performance, workload, and any change in his job duties or responsibilities.

We are in the same position as the district court. Its findings are supported by the record because Griffeth's deposition testimony showed that she lacked independent recollection about Sampat's and other medical consultants' work performance. She also testified that she could not recall any particular review, or how many reviews she conducted from Sampat's cases. And finally, Griffeth could not discern where she learned the information contained in her affidavit, the source of which very well could have come from Sampat himself. Because Griffeth's deposition testimony supports the district court's findings, Griffeth's affidavit and testimony were properly excluded.

Thus, Sampat has failed to carry his burden of proving that he was qualified for his position when he was terminated. This means that Sampat has failed to prove a prima

17

facie case of employment discrimination and summary judgment was appropriately granted.

In these employment discrimination cases, the plaintiff must start our burden shifting method of disposing of these claims by presenting a prima facie case of discrimination. Sampat has failed to do so. Summary judgment was properly granted to the Department.

Affirmed.

* * *

ARNOLD-BURGER, J., concurring:  I concur with the majority opinion, but write separately to express my concern about what I believe is an overreliance of the majority on the factors set out in *Beech Aircraft Corp. v. Kansas Human Rights Comm'n*, 254 Kan. 270, 274, 864 P.2d 1148 (1993), to establish a prima facie case when confronted with a claim of discrimination in termination under the Kansas Act Against Discrimination and the Kansas Age Discrimination in Employment Act. I begin with a history of this issue as outlined by our Supreme Court and the United States Supreme Court.

The *Beech Aircraft* factors were taken in whole from *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan. App. 2d 428, Syl. ¶ 7, 796 P.2d 1046 (1990). *Beech Aircraft Corp.*, 254 Kan. at 274. That case involved a sex and age discrimination claim by a male applicant, who was denied the job in favor of a female who was 20 years younger and less qualified than him. He claimed that in the hiring process adverse inquiries and comments were made about his age and that the woman who was retiring from the open position had revealed a preference for a female during the interview. *Kansas State Univ.*, 14 Kan. App. 2d at 430. The Court of Appeals relied on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for its

18

statement of the required showing for a racial discrimination in employment under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. 2000e et seq.

> "'The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.' 411 U.S. at 802." *Kansas State Univ.*, 14 Kan. App. 2d at 434.

A few years later in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), the United States Supreme Court returned to language it used in *McDonnell* and emphasized the flexibility involved in establishing the prima facie case in different situations.

> "'We added, however, that this standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations."' [411 U.S.] at 802 n. 13." *Kansas State Univ.*, 14 Kan. App. 2d at 435.

The Court of Appeals next turned to *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989), which involved an age discrimination claim related to a termination as part of a reduction in force. It found that based on *Carter*,

> "The Eleventh Circuit has adapted the test to age discrimination cases in the following manner: a prima facie case can be established 'with circumstantial evidence by proving: (1) that he is a member of the protected group; (2) that adverse employment action was taken against him, *e.g.* discharge, demotion, or failure to hire; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for

which he was rejected.' *Carter v. City of Miami*, 870 F.2d at 582." *Kansas State Univ.*, 14 Kan. App. 2d at 439.

Relying on *Carter*, the Court of Appeals concluded that there are three generally accepted methods to establish a prima facie case of discrimination, any one of which is sufficient: direct evidence of discriminatory intent, by meeting the four-prong test set out in *McDonnell*, or through statistical proof. "'Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption.'" *Kansas State Univ.*, 14 Kan. App. 2d at 438 (citing *Carter*, 870 F.2d at 581-82).

Following the Court of Appeals lead in *Kansas State Univ.*, the Kansas Supreme Court adopted the four *Carter* factors in *Beech Aircraft* but slightly modified the approach by inserting an intentional action requirement in the case of reductions in force.

"A modification in elements (3) and (4) may be appropriate where the individual's position is eliminated in layoffs or reductions in force. In such circumstances the plaintiff must '"produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" [Citations omitted.]" *Beech Aircraft*, 254 Kan. at 274.

That brings me to Pravin G. Sampat's case. Our decision here is whether Sampat presented sufficient uncontroverted evidence that his termination from employment for poor performance was actually based on his age or race to overcome the Kansas Department for Children and Families' summary judgment motion. Because this does not involve an initial employment decision, or a reduction in force, the *Beech Aircraft* factors are not quite on point. The flexibility urged in *McDonnell* and reiterated in *Texas Dept. of Community Affairs* is necessary.

20

As noted by the majority, the parties agree on the first two *Beech Aircraft* factors: Sampat was in a protected group and was subjected to adverse employment action. They disagree on the final two. I submit the final two are not applicable in the case of termination for cause or, more specifically here, poor performance.

The majority recognizes the problem with the third *Beech Aircraft* factor—the employee is replaced by a person outside the protected group—so it turns to the substitute factor the Supreme Court said should be used instead of factors 3 and 4 in the case of reductions in force—"'produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Beech Aircraft*, 254 Kan. at 274. The majority explicitly recognizes that these factors are necessarily just a model used by the court and the more appropriate question to consider under these facts is "is there evidence of discrimination by the Department in [the] discharge?" Slip op. at 15. I agree. It is really the only factor in the case of termination for cause. But the majority ends the discussion there and does not discuss the evidence or lack of evidence of discriminatory intent. I will return to that.

Finally, the majority goes on to examine the fourth *Beech Aircraft* factor:  was Sampat qualified for the position for which he was rejected? The majority finds that Sampat did not present sufficient evidence that he was qualified for the position. This appears to be grounded in the lack of evidence that he performed the job up to Department standards, therefore he could not prove he was qualified. In fact, the majority appears to make this the determinative factor, not once but twice.

> "The only evidence remaining is Sampat's own testimony, which does not establish that he was qualified for his position when he was terminated. As a result, summary judgment was appropriately granted because Sampat failed to prove a prima facie case of discrimination." Slip op. at 16.

21

"Thus, Sampat has failed to carry his burden of proving that he was qualified for his position when he was terminated. This means that Sampat has failed to prove a prima facie case of employment discrimination and summary judgment was appropriately granted." Slip op. at 17.

This is where, I believe, the majority has tried to put a round peg into a square whole and blindly apply the *Beech Aircraft* factors to a termination case based on performance. Whether the person is qualified for the position is a factor uniquely related to whether they were hired for an open job. The court in *Beech Aircraft* made it clear that this final factor would not apply in a reduction in force situation because it combined factors 3 and 4 into an overarching question of whether there was any evidence that the employer intended to discriminate. The same would be true in a termination for cause case. Yet the majority resurrects it here. In the case of a termination for cause, this factor simply does not or could not apply. Of course, Sampat was qualified for the position. He was hired to do it and had been for several years. Poor performance does not equate to lack of qualifications. That is why this factor is inapplicable here, and I disagree with the majority's inclusion of it in the analysis.

All of that said, I agree summary judgment was appropriate, but for reasons different than the majority and the district court. As succinctly stated by the majority,

"[T]he ultimate question for the factfinder is whether age, race, ethnicity, or national origin was a determining factor in the employer's decision. It need not be the sole reason, but there must be a showing that the plaintiff's protected class membership '"made the difference" in the employer's decision.' *Elza v. Koch Indus., Inc.*, 16 F. Supp. 2d 1334, 1339-40 (D. Kan. 1998)." Slip op. at 11-12.

And I agree with the majority that we begin with the claimant presenting a prima facie case. If he cannot, the case ends. Consistent with my disagreement with the way the *Beech Aircraft* factors were applied and analyzed here, I agree with Sampat that he need

22

not prove as a part of his prima facie case that he was replaced by a person outside his class and he does not have to prove he was qualified for the position. Although it appears the parties and the district court seemed to use the term "qualified" to mean an absence of poor performance. Given the parties agree that he is a member of a protected class and adverse action was taken against him, the only issue is whether he has submitted sufficient evidence of discriminatory intent to go forward. He has not.

In response to the Department's motion for summary judgment, Sampat stated that he was relying only on his own deposition testimony and an affidavit provided by a coworker, Dr. Erin Griffeth, to support his claims. So we need only look to those to see if they present sufficient uncontroverted facts to allow his claim to survive summary judgment.

In his deposition, to support his claim that he was treated differently and discriminatorily, Sampat testified that his caseload was reduced from 18 cases a day to 8 cases a day. Yet he had no idea if the cases of other doctors were also being reduced. He testified that his supervisor reduced his number of "quick review" cases, but he did not know if she had reduced anybody else's "quick review" cases. When asked why he believes his termination was based on his race, age, or national origin, he responded that he believed that under prior bosses he was doing a good or better job than other doctors working there, yet he was terminated. That said, he also testified that he does not know if other doctors were terminated. He testified that he had no knowledge about how many or kinds of files were assigned to other doctors, but Dr. Griffeth told him she knew he was not receiving the easier cases that took a short amount of time.

Sampat submitted an affidavit from Dr. Griffeth which stated:

> "5. As a medical consultant I had the opportunity to review appeals of determinations made by other physicians including Dr. Sampat.

23

"6. In my experience at DDS nearly all of the Medical Consultants would have had a disability review returned for some deficiency.

. . . .

"9. In late 2019, I did have occasion to observe a change in that DDS was not sending Dr. Sampat certain cases for review.

"10. I recall commenting in a text message to Dr[.] Sampat in December of 2019 that he was not being assigned to certain cases particularly the easier cases to review including signature cases and DRHO's.

"11. Based upon my observation it appeared that he was receiving a far disproportionate number of multiple thousand page charts for review.

. . . .

"15. Dr. Sampat performed the medical reviews as well as myself and the other physicians employed as Medical Consultants at DDS."

Several months later, the Department was allowed to depose Dr. Griffeth regarding the statements in her affidavit. She testified that the only way she would come to review an opinion given by Sampat would be if it came back from a supervisor from an appeal. She did not remember reviewing any opinions of Sampat's that had been sent back down from a supervisor. She testified that although every medical consultant had cases sent back to them for some deficiency, she did not know how often.

She testified that she did not know how she became aware that Sampat was not receiving certain cases as set out in paragraph 9 of her affidavit, nor does she recall if it was actually Sampat that told her of the change. She did not recall how she came to be commenting in a text message about Sampat not being assigned certain cases and the source of the information could have been Sampat. As to paragraph 11 of her affidavit, she testified that this was information she received from some other source, but she did not recall what source and that source may have been Sampat. She testified she knew nothing about the work product of any of the other medical consultants working at the Department. And she testified that she had no knowledge that would lead her to believe that Sampat was terminated because of his race or age. She said she had no reason to

24

believe Sampat did not do a good job. The district court, based on Dr. Griffeth's testimony, found her affidavit to be based on evidence that would be inadmissible if offered at trial and struck all the paragraphs listed above.

Given this was the only evidence presented by Sampat to support his claims, it was insufficient to establish a discriminatory intent for his firing. Therefore, I support affirming the district court's decision albeit under a different analytic framework.